**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF ARKANSAS**
**CENTRAL DIVISION**

**KARYNA CARBONE** **PLAINTIFF**

**V.** **CASE NO. 4:25-CV-01270 LPR-JTK**

**SOCIAL SECURITY ADMINISTRATION** **DEFENDANT**

# RECOMMENDED DISPOSITION

## I. Procedures for filing Objections:

This Recommended Disposition ("Recommendation") has been sent to United States District Judge Lee P. Rudofsky. Either party may file written objections to this Recommendation. If objections are filed, they should be specific and should include the factual or legal basis for the objection.

To be considered, objections must be received in the office of the Court Clerk within fourteen (14) days of this Recommendation. If no objections are filed, Judge Rudofsky can adopt this Recommendation without independently reviewing the record. By not objecting, parties may also waive the right to appeal questions of fact.

## II. Introduction:

Plaintiff, Karyna Carbone ("Carbone"), filed an application for disability benefits on April 19, 2023. (Tr. at 15). In the application, she alleged that her disability began on August 30, 2020. *Id.* The application was denied initially and

upon reconsideration. *Id*. After conducting a hearing, an Administrative Law Judge ("ALJ") found that Carbone was not disabled. (Tr. at 15-28). The Appeals Council denied Carbone's request for review of the decision. (Tr. at 2-4). The ALJ's decision now stands as the final decision of the Commissioner, and Carbone has requested judicial review. For the reasons stated below, the Court should affirm the decision of the Commissioner.

## III. <u>The Commissioner's Decision</u>:

Carbone meets the insured status requirements of the Social Security Act through December 31, 2026. (Tr. at 17). The ALJ determined that Carbone has not engaged in substantial gainful activity since August 30, 2020, the alleged onset date.[1] *Id*. The ALJ found, at Step Two, that Carbone has the following severe impairments: degenerative changes of the lumbar and cervical spine, arthritis of the right knee,

[1] The ALJ followed the required five-step sequence to determine: (1) whether the claimant was engaged in substantial gainful activity; (2) if not, whether the claimant had a severe impairment; (3) if so, whether the impairment (or combination of impairments) met or equaled a listed impairment; (4) if not, whether the impairment (or combination of impairments) prevented the claimant from performing past relevant work; and (5) if so, whether the impairment (or combination of impairments) prevented the claimant from performing any other jobs available in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(a)-(g), 416.920(a)-(g).

Carbone worked during the relevant time-period at a job using a computer, but her earnings did not meet the self-employment earnings test. (Tr. at 17-18. 42). Working generally demonstrates an ability to perform a substantial gainful activity, and it is inconsistent with complaints of disabling conditions. *Naber v. Shalala*, 22 F.3d 186, 188-89 (8th Cir. 1994)

fibromyalgia/unspecified inflammatory arthritis, and obesity. (Tr. at 18).

The ALJ determined that Carbone did not have an impairment or combination of impairments that met or medically equaled a Listed Impairment.[2] (Tr. at 19-21). Next, the ALJ found that Carbone had the residual functional capacity ("RFC") to perform work at the light exertional level as defined in 20 C.F.R. § 404.1567(b), with the following limitations: (1) occasional climbing of ramps and stairs; (2) occasional balancing, stooping, kneeling, crouching, and crawling; (3) occasional overhead reaching; (4) occasional exposure to extreme cold and vibration; (5) frequent handling and fingering; (6) can never climb ladders, ropes, or scaffolds; and (7) can never be exposed to unprotected heights or dangerous moving machinery. (Tr. at 21).

The ALJ found that Carbone, who was 48 years old on the alleged disability onset date, is capable of performing past relevant work as a curriculum advisor. (Tr. at 25-28). Additionally, relying upon testimony from a vocational expert ("VE"), the ALJ found that, considering Carbone's age, education, work experience, and RFC, jobs existed in significant numbers in the national economy that Carbone could perform. *Id*. Therefore, the ALJ concluded that Carbone was not disabled. *Id*.

[2] See 20 C.F.R. Part 404, Subpart P Appendix 1: "Adult Listing of Impairments."

## IV. **Discussion**:

### A. Standard of Review

The Court's function on review is to determine whether the Commissioner's decision is supported by substantial evidence on the record as a whole and whether it is based on legal error. *Miller v. Colvin*, 784 F.3d 472, 477 (8th Cir. 2015); *see also* 42 U.S.C. § 405(g). While "substantial evidence" is that which a reasonable mind might accept as adequate to support a conclusion, "substantial evidence on the record as a whole" requires a court to engage in a more scrutinizing analysis:

> "[O]ur review is more than an examination of the record for the existence of substantial evidence in support of the Commissioner's decision; we also take into account whatever in the record fairly detracts from that decision." Reversal is not warranted, however, "merely because substantial evidence would have supported an opposite decision."

*Reed v. Barnhart*, 399 F.3d 917, 920 (8th Cir. 2005) (citations omitted).

In clarifying the "substantial evidence" standard applicable to review of administrative decisions, the Supreme Court has explained: "And whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence . . . 'is more than a mere scintilla.'" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting *Consolidated Edison Co. v. NLRB*, 59 S. Ct. 206, 217 (1938)). "It means—and means only—'such relevant

evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id*.

It is not the task of this Court to review the evidence and make an independent decision. Neither is it to reverse the decision of the ALJ because there is evidence in the record which contradicts his findings. The test is whether there is substantial evidence in the record as a whole, which supports the decision of the ALJ. *Miller*, 784 F.3d at 477.

B. Carbone's Arguments on Appeal

Carbone contends that the evidence supporting the ALJ's decision to deny benefits is less than substantial. She argues that: (1) the ALJ erred in how he evaluated Carbone's subjective complaints; (2) the RFC did not incorporate all of Carbone's credible limitations (and was unsupported because it did not rely on any specific medical opinion); and (3) the ALJ did not properly consider Carbone's alleged manipulative restrictions.

**1) Subjective Complaints**[3]

[3] When evaluating a claimant's subjective complaints, the ALJ must consider objective medical evidence, the claimant's work history, and other evidence relating to (1) the claimant's daily activities; (2) the duration, frequency, and intensity of symptoms; (3) precipitating and aggravating factors; (4) the dosage, effectiveness, and side effects of medication; and (5) the claimant's functional restrictions. *See Schwandt v. Berryhill*, 926 F.3d 1004, 1012 (8th Cir. 2019). "An ALJ need not explicitly discuss each factor," and he may "decline to credit a claimant's subjective complaints if the evidence as a whole is inconsistent with the claimant's testimony." *Id*. (internal citations omitted).

The ALJ assessed the record as a whole and found that Carbone's subjective complaints were not entirely consistent with the evidence or her own testimony. (Tr. at 22-25). Carbone argues that this analysis was insufficient.

The ALJ considered and discussed the nature of Carbone's pain, objective findings showing moderate conditions in her lumbar spine, and Carbone's alleged difficulties in daily living as a result. *Id*. But he also weighed her ability to perform some daily activities, in spite of her pain. Carbone said she could prepare her own meals, clean bathrooms, do laundry, ride in a car, dust with a Swiffer, and shop in store for groceries once a week. (Tr. at 39, 50, 260-262). She also testified that her self-employment job required her to use a computer. (Tr. at 42). These daily activities undermine allegations of total disability, and the ALJ considered this.[4] Carbone argues that the ALJ's discussion of her testimony about her activities was too brief, but an ALJ is not required to reference every piece of evidence.[5]

The ALJ also discussed Carbone's treatment and response to treatment, her work history, her medications, and her functional capacity. I find no error in his

[4] *Andrews v. Colvin*, 791 F.3d 923, 929 (8th Cir. 2015); *Edwards v. Barnhart*, 314 F.3d 964, 967 (8th Cir. 2003).

[5] *See Reeves v. Colvin*, 650 F.App'x 298, 298 (8th Cir. 2016) (unpublished); *Grindley v. Kijakazi*, 9 F.4th 622, 630 (8th Cir. 2021) (record as a whole supported ALJ's decision, in spite of brevity of ALJ's of discussion).

discussion of subjective complaints.

**2) RFC and medical opinions**

Carbone generally alleges that the RFC did not incorporate all of her credible limitations, and more specifically, she avers that the ALJ's decision could not stand because he did not rely on any particular medical opinion.[6] It is true that he found none of the medical opinions to be entirely persuasive.[7]

The state-agency medical experts (Dr. Ellen Humphries, M.D., and Dr. James Hinchen, M.D.) reviewed the records and found that Carbone could perform light work with essentially no postural restrictions. (Tr. at 59-75). The ALJ found these opinions unpersuasive, citing to medical evidence that supported *more* RFC

---

[6] A claimant's RFC represents the most he can do despite the combined effects of all of his credible limitations and must be based on all credible evidence. In determining the claimant's RFC, the ALJ has a duty to establish, by competent medical evidence, the physical and mental activity that the claimant can perform in a work setting, after giving appropriate consideration to all of his impairments. *Ostronski v. Chater*, 94 F.3d 413, 418 (8th Cir. 1996). An ALJ is not required to include limitations in the RFC that are not supported by the evidence in the record. *McGeorge v. Barnhart*, 321 F.3d 766, 769 (8th Cir. 2003).

There is no requirement that an RFC finding be supported by a specific medical opinion. *See Hensley v. Colvin*, 829 F.3d 926, 932 (8th Cir. 2016) (affirming RFC without medical opinion evidence); *Perks v Astrue*, 687 F.3d 1086, 1092-1093 (8th Cir. 2012).

[7] The ALJ must "evaluate the persuasiveness of medical opinions by considering (1) whether they are supported by objective medical evidence, (2) whether they are consistent with other medical sources, (3) the relationship that the source has with the claimant, (4) the source's specialization, and (5) any other relevant factors." *Bowers v. Kijakazi*, 40 F.4th 872, 875 (8th Cir. 2022) (citing 20 C.F.R. § 404.1520c(c)). However, "[t]he first two factors—supportability and consistency—are the most important." *Id*. (citing 20 C.F.R. § 404.1520c(a)). Pursuant to the regulations, "treating physicians are [no longer] entitled to special deference." *Austin v. Kijakazi*, 52 F.4th 723, 728 (8th Cir. 2022) (citing 20 C.F.R. § 404.1520c(a)).

limitations. (Tr. at 24). The fact that the ALJ, after reviewing objective findings, the nature of Carbone's pain, and her alleged functional difficulties, imposed more restrictions than either of the medical experts did, inures to Carbone's benefit, so this argument fails to convince.

The ALJ also found unpersuasive the opinions of treating physician James Holloway, M.D., and APRN M. Bittengle, who opined that Carbone could not even perform sedentary work. (Tr. at 24-25, 790-793, 913-917). The ALJ found that these opinions were unpersuasive. *Id*. These providers treated Carbone infrequently and conservatively. (Tr. at 22-24). Some clinical exams by these providers demonstrated that Carbone had pain, but others were grossly normal in terms of gait and station and range of motion. *Id*. Carbone indicated that steroid injections were helpful.[8] *Id*.

The ALJ stated that the two opinions were inconsistent with the providers' own treatment notes and he noted, additionally, that Carbone had scheduled a trip to Europe, undercutting her claims of disabling pain.[9] The ALJ's analysis was less than fulsome, but it referenced evidence in support of the conclusions and so it

---

[8] Impairments that are controllable or amenable to treatment do not support a finding of total disability. *Mittlestedt v. Apfel*, 204 F.3d 847, 852 (8th Cir. 2000).

[9] Carbone asserts that the ALJ misstated evidence about when Carbone got injections in her hands, but any misstatement did not undermine the overall discussion or decision about Carbone's functional abilities. (Doc. No. 10 at 15); (Tr. at 25).

cleared the bar for handling of medical opinions. I find that the ALJ properly discounted the restrictive opinions of Dr. Holloway and APRN Bittengle.

The RFC determination was likewise supported: it accounted for limitations from pain and it included environmental restrictions, aligning with the medical evidence of Carbone's generally moderate conditions, her ability to perform daily activities, and her need for only conservative treatment (which treatment was helpful).

**3) RFC hand restrictions**

Carbone argues that she could not perform the manipulative hand functions set forth in the RFC. There is very little evidence of treatment for hand impairments, although the ALJ noted that Carbone was diagnosed with Dupuytren's contracture, a progressive condition causing restriction on finger movement and pain.[10] (Tr. at 24, 627). He noted that she had injections in her hands for pain. *Id.*; (Tr. at 51-52). Based on this evidence, the ALJ assigned an RFC including frequent (rather than constant) handling and fingering and occasional overhead reaching. (Tr. at 21). Again, the RFC was more restrictive than that proposed by the state-agency experts. And it accounted for relatively little treatment and Carbon's ability to perform a

---

[10] https://www.mayoclinic.org/diseases-conditions/dupuytrens-contracture/symptoms-causes/syc-20371943.

variety of activities requiring manual dexterity.[11] While Carbone states that no medical doctor opined that she could perform frequent handling and fingering, and she avers that Dr. Hollaway's RFC finding should have been credited, Dr. Hollaway noted that Carbone *did not* have significant limitations with reaching, handling, or fingering. (Tr. at 916).

Carbone also argues that the ALJ should have further developed the record.[12] It was up to Carbone to present her strongest case and to submit evidence to advance her claim.[13] There was no glaring contradiction in the record that would have required further development or a consultative examination. An ALJ is not required to go on a fishing expedition to find records that a claimant has omitted. The ALJ properly considered the record as a whole and the RFC incorporates all of Carbone's

---

[11] A diagnosis [like Dupuytren's contracture] alone does not infer disability; there must be a functional loss establishing the inability to engage in substantial gainful activity. *See Trenary v. Bowen*, 898 F.2d 1361, 1364 (8th Cir. 1990).

[12] An ALJ does have a basic duty to develop a reasonably complete record. *McCoy v. Astrue*, 648 F.3d 605, 612 (8th Cir. 2011); *Clark v. Shalala*, 28 F.3d 828, 830-831 (8th Cir. 1994). However, it is well-settled that a claimant has the burden of proving her disability; the ALJ does not have to play counsel for the claimant and the ALJ's duty to develop is not never-ending. *Id.* The ALJ is required to recontact a treating or consulting physician or order further testing only if the medical records presented do not provide sufficient evidence to make a decision on disability. *Martise v. Astrue*, 641 F.3d 909, 926-7 (8th Cir. 2011). Absent unfairness or prejudice, reversal for failure to develop the record is not warranted. *Shannon v. Chater*, 54 F.3d 484, 486 (8th Cir. 1995).

[13] A claimant's representative has an affirmative duty to obtain and supply information necessary for the claimant to support his claim. 20 C.F.R. §§ 404.1540(b), 416.940(b).

credible limitations.

**V. <u>Conclusion</u>:**

There is substantial evidence to support the Commissioner's decision to deny benefits. The finding that Carbone was not disabled within the meaning of the Social Security Act, therefore, should be affirmed. The case should be dismissed, with prejudice.

IT IS SO ORDERED this 24th day of November, 2026.

UNITED STATES MAGISTRATE JUDGE